12-1207-cv
*Kelly-Brown, et al. v. Winfrey, et al.*

UNITED STATES COURT OF APPEALS

For the Second Circuit

————————————————

August Term, 2012

(Argued: September 25, 2012                    Decided: May 31, 2013)

Docket No. 12-1207-cv

————————————————

SIMONE KELLY-BROWN and OWN YOUR POWER COMMUNICATIONS, INC.,

*Plaintiffs-Appellants*,

—v.—

OPRAH WINFREY, HARPO PRODUCTIONS, INC., HARPO, INC., HEARST CORPORATION, HEARST
COMMUNICATIONS, INC., WELLS FARGO & CO., ESTEE LAUDER COMPANIES, INC., CLINIQUE
LABORATORIES, LLC, CHICO'S FAS, INC., ABC COMPANIES (1-100), and JOHN DOES (1-100),

*Defendants-Appellees.*

————————————————

Before: STRAUB, SACK and CHIN, *Circuit Judges*.

————————————————

On appeal from judgment entered pursuant to an Order dated March 6, 2012 by the
United States District Court for the Southern District of New York (Paul A. Crotty, *Judge*)
granting Defendants-Appellees' motion to dismiss. Plaintiff is the owner of a motivational
services business named "Own Your Power Communications, Inc.," and has a registered service
mark in "Own Your Power." Defendants published a magazine cover, hosted an event, and built
a section of a website all utilizing the phrase "Own Your Power." Plaintiffs bring suit alleging
trademark infringement under the Lanham Act. The District Court held that the defendants' use
of the phrase "Own Your Power" constituted fair use and also held that plaintiffs' claims failed
because she failed to meet the threshold requirement of showing use as a mark. We disagree
with the District Court's holding that the defendants have demonstrated fair use and also with its
holding that plaintiffs are required to make a threshold showing that defendants' used "Own
Your Power" as a mark in order to state a claim for trademark infringement. We therefore
**VACATE** the judgment of the District Court with respect to plaintiffs' trademark infringement,
false designation of origin, and reverse confusion claims and **REMAND** for further proceedings
not inconsistent with this opinion. The District Court granted defendants' motion to dismiss
plaintiffs' counterfeiting, vicarious infringement, and contributory infringement claims on
separate grounds, and we **AFFIRM** with respect to these claims.

1
2    Judge SACK concurs in the result in a separate opinion.
3
4    _____
5
6    PATRICIA LAWRENCE-KOLARAS, The PLK Law Group, P.C., Hillsborough, NJ, *for*
7        *Plaintiffs-Appellants*.
8
9    JONATHAN R. DONNELLAN (Ravi V. Sitwala, Debra S. Weaver, *on the brief*), The Hearst
10       Corporation, New York, NY, Charles L. Babcock, Jackson Walker L.L.P.,
11       Houston, TX, *for Defendants-Appellees*.
12    _____
13   STRAUB, *Circuit Judge*:

14        Plaintiff Simone Kelly-Brown ("Kelly-Brown") is the owner of a motivational services

15   business, Own Your Power Communications, Inc., that holds events and puts out publications

16   under the registered service mark "Own Your Power."  Defendants Oprah Winfrey ("Oprah"),

17   Harpo, Inc., and Harpo Productions, Inc. (collectively, "Harpo"), and Hearst Corp. and Hearst

18   Communications, Inc. (collectively, "Hearst") were involved in the production of a magazine,

19   event, and website also employing the phrase "Own Your Power."  Kelly-Brown argues that in

20   so using the phrase, the defendants infringed upon her mark.  She brings suit for claims including

21   trademark infringement, false designation of origin, reverse confusion, and counterfeiting.  She

22   also brings suit for vicarious and contributory infringement against Wells Fargo & Co. ("Wells

23   Fargo"), Clinique Laboratories, LLC ("Clinique"), Estee Lauder Cos., Inc. ("Estee Lauder"), and

24   Chico's FAS, Inc. ("Chico's"), which were all corporate sponsors of the allegedly infringing

25   "Own Your Power" event.

26        Kelly-Brown appeals from the grant of a motion to dismiss in the Southern District of

27   New York (Paul A. Crotty, *Judge*), finding that the defendants' use of the phrase "Own Your

28   Power" was fair use.  The District Court dismissed Kelly-Brown's counterfeiting, vicarious

29   infringement, and contributory infringement claims on additional grounds.  Because we find that

2

1  the defendants have not adequately established a fair use defense, we **VACATE** the judgment of

2  the District Court with respect to Kelly-Brown's trademark infringement, false designation of

3  origin, and reverse confusion claims and **REMAND** this case for further proceedings not

4  inconsistent with this opinion.  We agree with the District Court's holdings with respect to Kelly-

5  Brown's vicarious infringement, contributory infringement, and counterfeiting claims and

6  therefore **AFFIRM** with respect to these claims.

7                                          **BACKGROUND**

8            The allegations recited below are taken from the complaint, and we assume they are true

9  for the purposes of this appeal.

10           Kelly-Brown owns a motivational services business organized around the concept "Own

11  Your Power."  Kelly-Brown hosts a radio show, holds conferences and retreats, and writes a blog

12  promoting the concept of "owning" one's power.  She also has a federally registered service

13  mark in the phrase "Own Your Power."

14           The service mark registered with the United States Patent and Trademark Office is

15  displayed in a distinctive font that Kelly-Brown uses on her website and other materials, as

16  follows:[1]

*own your power*

17

18  The service mark states, "THE COLOR(S) LIGHT BLUE IS/ARE CLAIMED AS A FEATURE

19  OF THE MARK.  THE MARK CONSISTS OF LIGHT BLUE SCRIPTED LETTERS WHICH

20  CREATE THE WORDS OWN YOUR 'POWER.'"  Kelly-Brown's service mark was registered

21  May 27, 2008.

---

[1] The images discussed in this opinion are also available online at
http://www.ca2.uscourts.gov/Docs/Video_files/12_1207/Kelly-Brown_images.pdf

1    Defendant Oprah almost needs no introduction, but warrants one in this context.  She

2    runs a vast media empire, which consists of, *inter alia*, a magazine, and a website, which is run

3    by Harpo, and (until recently) a television program.  Oprah's name and images figure

4    prominently in the branding of these enterprises.

5    At roughly the same time that Kelly-Brown was seeking to register her service mark in

6    "Own Your Power," the defendants also sought to register a trademark in a new Oprah venture,

7    the Oprah Winfrey Network, to be known as "OWN."  During the creation of OWN, Harpo

8    arranged for the transfer of a trademark in "OWN ONYX WOMAN NETWORK" from its

9    original owner to Harpo to avoid an infringement action from that mark's original owner.

10    Defendants would likely have been aware of Kelly-Brown's pending registration for the service

11    mark in "Own Your Power," since the same search defendants would have run to locate and

12    negotiate the transfer of the trademark in "OWN ONYX WOMAN NETWORK" would have

13    also revealed Kelly-Brown's mark.

14    Kelly-Brown alleges that the defendants infringed upon her service mark by producing a

15    bevy of publications, events, and online content all using the phrase, "Own Your Power."  For

16    example, the October 2010 issue of O, the Oprah Magazine (the "Magazine"), which was

17    distributed on or about September 13, 2010, prominently featured the words "Own Your Power"

18    on its front cover.  Beneath these words were the sub-headings "How to Tap Into Your

19    Strength"; "Focus Your Energy"; and "Let Your Best Self Shine."  It also contained the

20    following headline set off to the right side:  "THE 2010 O POWER LIST!  20 Women Who Are

21    Rocking the World."

Case 2:11-cv-04360-SRC -MAS   Document 20   Filed 09/23/11   Page 2 of 15 PageID: 578



1

1        The Power List therein consisted of a list of people who were influential in various fields,

2    with each serving as an example of a particular "kind" of power.  For example, one page

3    contained a photograph of the actress Julia Roberts and a paragraph describing her.  Set off from

4    the text is a red circle containing the phrase "THE POWER OF . . . living large."

5        On September 16, 2010, the Magazine, in connection with various other businesses,

6    including defendants Wells Fargo, Clinique, and Chico's, held an "Own Your Power" event (the

7    "Event").  At the Event, various celebrities posed for promotional photographs in front of an

8    "Own Your Power" backdrop that also contained trademarks for Chico's, Wells Fargo, Clinique,

9    and the Magazine.  The Event involved a seminar and workshop offering motivational advice

10    regarding self-awareness, self-realization, and entrepreneurship, under the aegis of the theme

11    "Own Your Power."  The Event was subsequently described in the December 2010 issue of the

12    Magazine as the "FIRST-EVER OWN YOUR POWER EVENT."

13        Following the Event, the Harpo website (the "Website") contained video clips from the

14    Event and placed "Own Your Power" banners and content on at least 75 different individual

15    webpages.  Each page containing the "Own Your Power" banner displayed the same header

16    image, with font and graphics that resembled the layout of the October issue of the Magazine.  In

17    the center of the banner were the words "Own Your Power!" in a large italicized font.  On either

18    side of these words were truncated, colored circles, each containing text.  The text inside the left-

19    most circle contained the words, "The Power of . . ."  To the right were arrayed other circles

20    containing ellipses followed by the words, ". . . heart," ". . . vision," ". . . one voice," and ". . .

21    seizing the moment."



The October issue contained pages with a similar format, with the phrase "the power of . . ." surrounded by various concepts written in colored circles, each beginning with an ellipsis.  The "Own Your Power" bannered pages of the website included articles such as, "How to Tap Into Your True Power," "Motivation:  One Entrepreneur's Fabulous Story," and "The Secrets of Success."  Each page is accompanied by banner advertisements.

Approximately two weeks after the Event occurred, the Magazine's Facebook page displayed photographs taken that evening.  On September 27, 2010, Oprah appeared on her television show and displayed the cover of the October 2010 issue of the Magazine.  In addition, the December 2010 issue of the Magazine, circulated around November 13, 2010, contained information encouraging readers to view the videos from the Event online at the Website.

1   Following the Magazine's Own Your Power cover, Kelly-Brown and Own Your Power

2 Communications, Inc. received numerous inquiries from people who appear to have confused

3 Kelly-Brown's services with Oprah's Event, Website, and Magazine.  Competition from Oprah

4 has been detrimental to Kelly-Brown's brand.

5   As a result, Kelly-Brown brought this suit in the District of New Jersey on July 28, 2011,

6 alleging six causes of action under the Lanham Act: trademark counterfeiting, trademark

7 infringement, reverse confusion, false designation of origin, contributory trademark

8 infringement, and vicarious trademark infringement, as well as seven New Jersey state law

9 claims.  On November 3, 2011, the District of New Jersey granted a motion to transfer venue of

10 the case to the Southern District of New York.

11   The defendants moved to dismiss.  The District Court granted their motion in its entirety.

12 *Kelly-Brown v. Winfrey*, No. 11 Civ. 7875, 2012 WL 701262 (S.D.N.Y. Mar. 6, 2012).  With

13 regard to the Lanham Act claims, the District Court held that the defendants' use of the words

14 Own Your Power constituted fair use.  The defense of fair use requires proof that the use was

15 made "(1) other than as a mark, (2) in a descriptive sense, and (3) in good faith."  *JA Apparel*

16 *Corp. v. Abboud*, 568 F.3d 390, 400 (2d Cir. 2009) (internal quotation marks omitted).

17   The District Court first reasoned that defendants engaged in a non-trademark use because

18 there was no chance that an observer of the Magazine or Event would believe that they were

19 created by Kelly-Brown and her company.  *Kelly-Brown*, 2012 WL 701262, at *3.  It noted that

20 Oprah was pictured on the October 2010 Magazine cover, indicating to the viewer who it was

21 that had put forward the Magazine.  *Id.*  Further, it stated that the placement of the phrase on the

22 Magazine's cover indicated that it was simply a headline describing the contents of the

23 Magazine.  *Id.*  In deciding that the Magazine Cover employed a non-trademark use of "Own

1  Your Power," the District Court indicated that the satisfaction of the first factor of the fair use

2  analysis alone would be sufficient to dismiss Kelly-Brown's Lanham Act claims, but it went on

3  to discuss the other two elements of the analysis because these, too, it believed, supported its

4  determination that the defendants had engaged in fair use of the phrase "Own Your Power." *Id.*

5  at *4.

6          Thus, the District Court determined that the use of the words "Own Your Power" was

7  descriptive because it described an action that it hoped that Magazine readers would take after

8  reading the Magazine. *Id.* at *4-5.

9          Finally, the District Court held that the defendants did not exhibit bad faith in using the

10 mark. It decided that Kelly-Brown had pleaded no facts that plausibly suggested that the

11 defendants intended to capitalize on her good will. *Id.* at *6. It reasoned further that there was

12 no likelihood of consumer confusion because the font, color, and formatting of the defendants'

13 use was significantly different from that protected by Kelly-Brown's registered service mark. *Id.*

14 The District Court therefore held that all three of the elements of the fair use defense were met.

15         Having found that the defendants' use constituted fair use, the District Court went on to

16 dismiss Kelly-Brown's trademark infringement, reverse confusion, and false designation of

17 origin claims on that basis. *Id.* at *6-7. With regard to contributory and vicarious trademark

18 infringement, it held that those claims should be dismissed because there was no primary

19 infringement to which any defendant could have contributed, and because Kelly-Brown had not

20 adequately alleged a partnership or agency relationship among any of the defendants. *Id.* at *7-8.

21         The District Court then dismissed Kelly-Brown's trademark counterfeiting claim because

22 there was no evidence that the defendants' use was identical in appearance to her own. *Id.* at *8-

23 9. Because it found that Kelly-Brown's complaint must be dismissed for all the above reasons, it

1    declined to reach the defendants' First Amendment arguments. *Id*. at *9. The District Court also

2    declined to exercise supplemental jurisdiction over Kelly-Brown's state law claims, thereby

3    dismissing her complaint in its entirety. *Id.*

4        This timely appeal followed.

5                                              **DISCUSSION**

6        On an appeal from a grant of a motion to dismiss, we review de novo the decision of the

7    district court. *Capital Mgmt. Select Fund Ltd. v. Bennett,* 680 F.3d 214, 219 (2d Cir. 2012). We

8    accept all factual allegations in the complaint as true, drawing all reasonable inferences in favor

9    of the plaintiff. *Tiberio v. Allergy Asthma Immunology of Rochester,* 664 F.3d 35, 36 (2d Cir.

10    2011). "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

11    accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556

12    U.S. 662, 678 (2009) (internal quotation marks omitted).

13        Kelly-Brown brings suit pursuant to §§ 32 and 43 of the Lanham Act. 15 U.S.C.

14    §§ 1114, 1125. Section 32(1)(a) of the Lanham Act prohibits any person from "us[ing] in

15    commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in

16    connection with the sale, offering for sale, distribution, or advertising of any goods or services on

17    or in connection with which such use is likely to cause confusion, or to cause mistake, or to

18    deceive." 15 U.S.C. § 1114(1)(a). Section 43(a) similarly prohibits any person from "us[ing] in

19    commerce," in connection with any goods or services, "any word, term, name, symbol, or

20    device, or any combination thereof . . . which . . . is likely to cause confusion, or to cause

21    mistake, or to deceive . . . as to the origin, sponsorship, or approval of his or her goods [or]

22    services . . . by another person . . . ." 15 U.S.C. § 1125(a)(1).

1    With one exception we discuss below, defendants here do not argue that Kelly-Brown has

2    failed to adequately allege the elements of an infringement claim. Rather, the defendants argue,

3    as the District Court decided, that their actions are protected by the doctrine of fair use. Before

4    we discuss the substance of that defense, it is helpful as background to observe that the Lanham

5    Act protects marks from two kinds of confusion. It protects against direct confusion, where there

6    is a likelihood that consumers will "believe that the trademark owner sponsors or endorses the

7    use of the challenged mark." *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos*

8    *Inc.*, 228 F.3d 56, 62 (2d Cir. 2000). It also protects against so-called "reverse confusion,"

9    where the consumer will believe "that the junior user is the source of the senior user's goods."

10   *Banff, Ltd. v. Federated Dep't Stores, Inc.*, 841 F.2d 486, 490 (2d Cir. 1988). In reverse

11   confusion cases, consumers may believe that the senior user is "an unauthorized infringer, and

12   the [junior user's] use of the mark may in that way injure [the senior user's] reputation and

13   impair its good will." *Id.* Kelly-Brown here alleges that defendants' repeated use of the phrase

14   "Own Your Power" causes reverse confusion within the market for motivational services and

15   publications, and therefore infringes her service mark in that same phrase.

16   In order to make a successful fair use defense to a trademark infringement claim, the

17   defendant must prove three elements: that the use was made (1) other than as a mark, (2) in a

18   descriptive sense, and (3) in good faith. *See* 15 U.S.C. § 1115(b)(4); *EMI Catalogue P'ship*, 228

19   F.3d at 64. The defendants offer only this narrow challenge to the adequacy of Kelly-Brown's

20   pleading of infringement: that the first element of a fair use defense, use as a trademark, is a

21   threshold requirement for adequately alleging a claim of infringement. That is to say, if Kelly-

22   Brown has not satisfied the "as a mark" requirement, her infringement claims fail as a matter of

23   law. We consider this argument and then discuss defendant's fair use defense.

1    **I.      Trademark Use as a Threshold Requirement**

2          In its analysis the District Court stated that unless Kelly-Brown showed that the

3    defendants used the phrase "Own Your Power" as a trademark, her claim must fail as a matter of

4    law. *Kelly-Brown*, 2012 WL 701262, at *4.  The defendants advance the same argument on

5    appeal.  Defendants claim that our prior decisions and law from the Sixth Circuit support the

6    conclusion that use as a mark is a threshold requirement.  We conclude that defendants

7    misinterpret our prior law, and we conclude that the Sixth Circuit's analysis does not comport

8    with our law on consumer confusion.

9          In interpreting our prior decisions, defendants conflate two distinct concepts, use *of* a

10   trademark in commerce and use *as* a mark, both of which, confusingly, we describe by the

11   shorthand phrase "trademark use."  Plaintiffs are required to show "use in commerce" as an

12   element of an infringement claim.  *See* 18 U.S.C. §§ 1114(1)(a), 1125(a)(1).  The Lanham Act

13   defines "use in commerce" as follows:

14           The term "use in commerce" means the bona fide use of a mark in the ordinary
15           course of trade, and not made merely to reserve a right in a mark. For purposes of
16           this chapter, a mark shall be deemed to be in use in commerce--

17               (1) on goods when--

18                   (A) it is placed *in any manner* on the goods or their containers or the
19                   displays associated therewith or on the tags or labels affixed thereto, or if
20                   the nature of the goods makes such placement impracticable, then on
21                   documents associated with the goods or their sale, and

22                   (B) the goods are sold or transported in commerce, and

23               (2) on services when it is used or displayed in the sale or advertising of
24               services and the services are rendered in commerce, or the services are
25               rendered in more than one State or in the United States and a foreign country
26               and the person rendering the services is engaged in commerce in connection
27               with the services.

28   15 U.S.C. § 1127 (emphasis added).

12

1       A plaintiff is not required to demonstrate that a defendant made use of the mark in any

2  particular way to satisfy the "use in commerce" requirement.  The element is satisfied if the mark

3  is affixed to the goods "in any manner."  15 U.S.C. § 1127; *see also Rescuecom Corp. v. Google,*

4  *Inc.*, 562 F.3d 123, 125-26, 129 (2d Cir. 2009) (holding that Google's use of the plaintiff's

5  trademark as a keyword to trigger the display of the advertiser's copy on Google's search results

6  page and as a suggestion to advertisers as a keyword they might purchase were sufficient to

7  satisfy the "use in commerce" requirement).

8       Defendants do not argue that Kelly-Brown has not satisfied the "use in commerce"

9  requirement.  Such an argument would be unavailing in any event.  The defendants have

10  certainly used the words "Own Your Power" in commerce.  The words "Own Your Power"

11  appeared prominently on the front cover of the Magazine—a good for sale—and on the Oprah

12  Website, which contained banner advertisements alongside "Own Your Power" content.

13       The analysis we conduct when considering whether a defendant has used a mark in

14  commerce contrasts sharply with the inquiry we conduct when, as here, we are considering

15  whether the defendant used a competitor's mark "as a mark."  In determining whether a

16  particular use is made "as a mark," we ask whether the defendant is using the "term as a symbol

17  to attract public attention."  *JA Apparel Corp.*, 568 F.3d at 400.

18       In *JA Apparel*, the defendant sold an eponymous clothing line; he subsequently began a

19  new clothing line and ran print ads for the line that included his trademarked name.  *Id.* at 392.

20  We suggested, without deciding, that our conclusion as to whether defendant was using his own

21  name as a mark would differ depending on the content of the ad he ran.  *Id.* at 402.  We

22  suggested that an ad which contained, in small text, the words "Designer Joseph Abboud in a 2

23  Button Super 120 S Charcoal Chalkstripe from His Fall 2008 Jaz Collection," would be a use of

13

1   defendant's name that was not a mark.  *Id.*  By contrast, we suggested that an ad which contained

2   the words, "A New Composition by JOSEPH ABBOUD," in larger text than the name of the

3   new brand, would be use as a mark.  *Id.*  When determining whether a defendant has used

4   something "as a mark," we must conduct a close examination of the content and context of the

5   use.

6          Thus, in determining whether the plaintiffs have satisfied the "use in commerce"

7   requirement, we ask whether the trademark has been displayed to consumers in connection with

8   a commercial transaction.  In determining whether a use is made "as a mark," however, we make

9   a more detailed determination of the particular manner in which the mark was used.

10          In arguing that "trademark use" is a threshold requirement, defendants rely upon *1-800*

11   *Contacts, Inc. v. WhenU.com, Inc.*, 414 F.3d 400, 411-12 (2d Cir. 2005).  They cite *1-800*

12   *Contacts* for the proposition that "'use' must be decided as a threshold matter."  *Id.* at 412.  An

13   examination of the surrounding text makes clear that *1-800 Contacts* refers not to use *as* mark,

14   but rather use *of* a mark in commerce.  This passage reads,

15          Not only are "use," "in commerce," and "likelihood of confusion" three distinct
16          elements of a trademark infringement claim, but "use" must be decided as a
17          threshold matter because, while any number of activities may be "in commerce"
18          or create a likelihood of confusion, no such activity is actionable under the
19          Lanham Act absent the "use" *of* a trademark.

20   *Id.* (emphasis added).  While we held in *1-800 Contacts* that demonstrating use in commerce is a

21   threshold burden on plaintiff, we have never so held with regard to use "as a mark."  Defendants

22   are therefore incorrect that our case law requires plaintiffs to demonstrate they have used Own

23   Your Power "as a mark" in order to adequately allege a cause of action for trademark

24   infringement.

25          Defendants also rely upon Sixth Circuit law for the proposition that use *as* a mark is a

26   threshold requirement for a Lanham Act claim.  The Sixth Circuit, unlike this Circuit, has held

14

1    that use *as* a mark is a threshold requirement.  *See Hensley Mfg., Inc. v. ProPride, Inc.*, 579 F.3d

2    603, 610 (6th Cir. 2009); *Interactive Prods. Corp. v. a2z Mobile Office Solutions, Inc.*, 326 F.3d

3    687, 694-95 (6th Cir. 2003).  The Sixth Circuit has extrapolated this requirement not from the

4    "use[] in commerce" element of the statute, 15 U.S.C. §§ 1114(1)(a), 1125(a)(1), but rather from

5    the consumer confusion element, reasoning that in instances where the defendant does not use

6    the mark as a designation of origin, consumers are unlikely to be misled as to the source of the

7    goods.  *Hensley Mfg.*, 589 F.3d at 610; *Interactive Prods.*, 326 F.3d at 695.

8         The Sixth Circuit's approach does not cohere with our jurisprudence on consumer

9    confusion.  In determining whether there is a likelihood of consumer confusion, we apply the

10   eight-factor balancing test set forth in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d

11   Cir. 1961).  "The eight factors are: (1) strength of the trademark; (2) similarity of the marks; (3)

12   proximity of the products and their competitiveness with one another; (4) evidence that the

13   senior user may 'bridge the gap' by developing a product for sale in the market of the alleged

14   infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative

15   mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of

16   consumers in the relevant market."  *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d

17   97, 115 (2d Cir. 2009).  "The application of the *Polaroid* test is 'not mechanical, but rather,

18   focuses on the ultimate question of whether, looking at the products in their totality, consumers

19   are likely to be confused.'"  *Id.* (quoting *Star Indus., Inc. v. Bacardi & Co., Ltd.*, 412 F.3d 373,

20   384 (2d Cir. 2005)).

21        The Sixth Circuit has made a judgment that no consumer will be confused unless the

22   defendant is using the infringing content as a mark.  But the *Polaroid* test, which we have long

23   used, is a fact-intensive inquiry that depends greatly on the particulars of each case.  To elevate

15

1    one particular consideration, which is not even one of the eight *Polaroid* factors, above all of the

2    other factors would be inconsistent with this Circuit's approach to Lanham Act cases.

3        Moreover, although we have never decided this precise issue, we have previously

4    allowed certain claims to proceed even where the defendant is not using the plaintiff's mark as a

5    mark.  *See, e.g.*, *EMI Catalogue P'ship*, 228 F.3d at 64, 67-68 (holding that material issues of

6    fact existed as to whether use of the slogan "Swing Swing Swing," playing off of the

7    trademarked song title "Sing Sing Sing (with a Swing)," was fair use, notwithstanding our

8    holding that the slogan was not used as a mark); *Louis Vuitton Malletier v. Burlington Coat*

9    *Factory Warehouse Corp.*, 426 F.3d 532, 539 (2d Cir. 2005) (holding that defendant's handbag

10   meant to evoke Louis Vuitton's trademarked handbags could create consumer confusion even in

11   the absence of an allegation that the defendant was attempting to establish its design as a

12   competing mark).  The Sixth Circuit's test would lead to the dismissal of these claims without

13   addressing what is beyond doubt the central question in considering consumer confusion:

14   whether consumers were actually confused by the allegedly infringing product.

15       We therefore decline to adopt the rule that Lanham Act plaintiffs must show that the

16   defendant was using the allegedly infringing content "as a mark" as a threshold issue in order to

17   establish consumer confusion.

18   **II.    Fair Use**

19       In order to assert a successful fair use defense to a trademark infringement claim, the

20   defendant must prove three elements:  that the use was made (1) other than as a mark, (2) in a

21   descriptive sense, and (3) in good faith.  *See* 15 U.S.C. § 1115(b)(4); *EMI Catalogue P'ship*, 228

22   F.3d at 64.  Because fair use is an affirmative defense, it often requires consideration of facts

23   outside of the complaint and thus is inappropriate to resolve on a motion to dismiss.  Affirmative

1    defenses may be adjudicated at this stage in the litigation, however, where the facts necessary to

2    establish the defense are evident on the face of the complaint. *McKenna v. Wright*, 386 F.3d

3    432, 436 (2d Cir. 2004). Plaintiffs, in rebutting defendants' arguments, are held only to the usual

4    burden of a motion to dismiss, *id.*, which is to say they must plead sufficient facts to plausibly

5    suggest that they are entitled to relief, *Iqbal*, 556 U.S. at 678.

6         Defendants here note that the mere fact that someone owns a mark that contains a

7    particular word or phrase does not grant the holder the exclusive right to use that word or phrase

8    commercially. *See Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 951 (7th Cir.

9    1992) ("The fair use doctrine is based on the principle that no one should be able to appropriate

10   descriptive language through trademark registration."). "[T]he owner's rights in a mark extend

11   only to its significance as an identifying source, not to the original descriptive meanings of a

12   mark," *EMI Catalogue P'ship*, 228 F.3d at 64, and so where another person uses the words

13   constituting that mark in a purely descriptive sense, this use may qualify as permissible fair use.

14        We now consider whether the defendants have satisfied each element of a fair use

15   defense in turn.

16        *A. Trademark Use*

17        As noted above, in determining whether the defendants were using the words "Own Your

18   Power" as a mark, we ask whether they were using the term "as a symbol to attract public

19   attention." *JA Apparel*, 568 F.3d at 400 (internal quotation marks omitted). Kelly-Brown

20   alleges that the defendants used the phrase "Own Your Power" in several unique instances and

21   that these collectively constitute use as a mark. She provides allegations regarding several such

22   uses, including: (1) the October Issue of the Magazine, featuring the phrase in the center of the

23   Issue's cover; (2) the Own Your Power Event, billed as the "first ever," that featured

17

1  motivational content; (3) promotion of the Event through social media; and (4) the online video

2  from the Event and other motivational articles provided on an "Own Your Power" section of

3  Oprah's website.  Kelly-Brown argues that, taken together, these uses suggest that the defendants

4  were attempting to build an association with consumers between the phrase "Own Your Power"

5  and Oprah.

6         At this stage in the litigation, this array of uses is sufficient for us to infer a pattern of use.

7  We thus conclude that Kelly-Brown has plausibly alleged that Oprah was attempting to build a

8  new segment of her media empire around the theme or catchphrase "Own Your Power,"

9  beginning with the October Issue and expanding outward from there.  We have recognized that

10 established companies are allowed to seek trademarks in sub-brands.  *See Abercrombie & Fitch*

11 *Co. v. Hunting World, Inc.*, 537 F.2d 4, 14 (2d Cir. 1976).  Kelly-Brown's complaint implies that

12 Oprah is a brand and is therefore the ultimate source of all things related to that brand, but that

13 defendants sought to use the phrase "Own Your Power" to denote a particular line of services

14 and content within the larger Oprah brand.

15        Defendants counter that this case is on all fours with *Packman v. Chicago Tribune Co.*,

16 267 F.3d 628, 633 (7th Cir. 2001).  There, the Chicago Tribune published a newspaper with the

17 headline "The Joy of Six" after the Chicago Bulls won their sixth basketball championship.  *Id*.

18 at 634.  Plaintiff claimed she had a trademark in the phrase.  *Id*.  The Tribune later reproduced

19 this front page on various promotional items.  *Id*.  The Seventh Circuit concluded that this use

20 was merely a headline, rather than a use as a mark, because the Tribune's masthead clearly

21 identified the source of the newspaper, and because the sports memorabilia at issue in the case

22 was more readily identifiable with the Tribune brand name than with the phrase "Joy of Six."  *Id*.

23 at 639-40.  Defendants rely on *Packman* to argue that their use of the phrase "Own Your Power"

18

1    was similarly only a headline and that the subsequent use in connection with the Event and on

2    the Website were derivative of this use.

3           Defendants' use of the phrase "Own Your Power" was much different than the Chicago

4    Tribune's use of the phrase "The Joy of Six."  Defendants' use was far more wide-ranging and

5    varied.  At least with respect to the Website, the content was not merely derivative of the

6    October Issue in the sense that the promotional items in *Packman* were derivative of the original

7    headline.  In *Packman*, the promotional hats and T-shirts plaintiff alleged infringed her

8    trademark merely reproduced the front page of a particular issue of the Chicago Tribune.  By

9    contrast, the articles on the Website here contained unique content that was not previously

10    published in the October Issue of the Magazine.  The webpages attached to the complaint do not

11    even directly reference the October Issue, its cover page, or its content.  A viewer of these pages

12    could easily read their copy without realizing that an issue of the Magazine had ever so much as

13    used the phrase "Own Your Power."

14           The Complaint provides few allegations regarding what happened at the Event.  It was,

15    however, referred to as the "first-ever" of its kind, suggesting that it was not directly tied to a

16    particular issue of the Magazine, but instead was to be a recurring enterprise within the Oprah

17    media empire.

18           Courts are more likely to treat recurring themes or devices as entitled to protection as a

19    mark, even where a single iteration might not enjoy such protection.  The titles of literary series

20    enjoy more protection as marks than single works of artistic expression.  *Compare EMI*

21    *Catalogue P'ship*, 228 F.3d at 63 (holding that a single work of artistic expression is entitled to

22    protection if the title has acquired secondary meaning) *with* 2 J. THOMAS MCCARTHY,

23    MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 10:7 (4th ed. 2012) ("[S]econdary

19

1    meaning need not be proven for an inherently distinctive title of a literary series, newspaper,

2    periodical, television series or the like.").  Similarly, courts have protected advertising slogans

3    under the theory that companies have devoted a great deal of time and expense into creating an

4    association in the minds of consumers between a slogan and a particular product.  *See, e.g.*, *Nike,*

5    *Inc. v. "Just Did It" Enters.*, 6 F.3d 1225, 1227-28 (7th Cir. 1993); *Cont'l Scale Corp. v. Weight*

6    *Watchers Int'l, Inc.*, 517 F.2d 1378, 1379-80 (C.C.P.A. 1975); *Chem. Corp. of Am. v. Anheuser-*

7    *Busch, Inc.*, 306 F.2d 433, 436 (5th Cir. 1962).

8        Repetition is important because it forges an association in the minds of consumers

9    between a marketing device and a product.  When consumers hear a successful slogan, for

10    example, they immediately think of a particular product without even being prompted by the

11    product's actual name.  When they encounter the title of a popular literary series, they will

12    recognize, just based on the name, that the work is one of that series and is therefore the work of

13    a particular author.  The slogan or title becomes a symbolic identifier of a product or product line

14    through repetition.

15        It is adequately alleged in the complaint that the defendants were trying to create, through

16    repetition across various forms of media, a similar association between Oprah and the phrase

17    "Own Your Power."  The defendants began to create the association between that phrase and

18    Oprah with the cover of the October Issue of the Magazine, and continued to encourage it

19    through both the Event and the Website.  Each of these employed usages of the phrase "Own

20    Your Power" involved separate content and context, and thus it is plausible that the defendants

21    were attempting to build up a line of wide-ranging content all denoted by the phrase "Own Your

22    Power."  "Own Your Power," through these interrelated uses, would thus become symbolic

23    shorthand for the products and message as a whole, meant to remind consumers of a particular

1    kind of Oprah-related content.  Thus, plaintiffs have alleged that this repeated and wide-ranging

2    usage of the phrase "Own Your Power" functioned as a mark.  Of course, further information

3    may emerge during discovery that undermines Kelly-Brown's theory that Oprah's use was an

4    attempt to create a sub-brand, but her allegations are sufficient at this stage.

5            The fact that Oprah's (household) name was also attached to the Magazine, the Website,

6    and the Event does not suffice to demonstrate that "Own Your Power" was not also employed as

7    a mark in each of its uses by defendants.  It is well established law that both a slogan and a single

8    brand name can serve as co-existent marks.  *See Grotrian, Helfferich, Schulz, Th. Steinweg*

9    *Nachf. v. Steinway & Sons*, 523 F.2d 1331, 1338-39 (2d Cir. 1975) (holding that "Steinway The

10    Instrument of Immortals" was a properly "registered slogan" notwithstanding the fact that

11    Steinway itself was also a protected mark); *see also Sands, Taylor & Wood Co. v. Quaker Oats*

12    *Co.*, 978 F.2d 947, 954 (7th Cir. 1992) ("Nor is a defendant's use of a term in conjunction with

13    its own trademark *per se* a use other than as a trademark." (internal quotation marks omitted)); 1

14    MCCARTHY ON TRADEMARKS § 7.21 ("The fact that a slogan is used in conjunction with a

15    previously existing trademark does not mean that the slogan does not also function as a mark, for

16    a product can bear more than one trademark.").

17            To be sure, we have previously noted that "the prominent display of the defendants' own

18    trademarks" can contribute to a finding that the defendants were not using a different distinct

19    phrase as a mark.  *See Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co.*, 125

20    F.3d 28, 30-31 (2d Cir. 1997).  In *Cosmetically Sealed*, a lipstick manufacturer had a display of

21    trial-sized lipsticks as well as complimentary postcards that customers were encouraged to use to

22    test the lipsticks.  *Id.* at 29.  The display featured the words, "Seal it with a Kiss!!" which another

23    lipstick manufacturer, the plaintiff, used as a slogan, and in which the plaintiff held a valid

1    trademark.  *Id*.  We there held that such use was not done "as a mark."   But *Cosmetically Sealed*

2    did not announce a rule that all use was other than "as a mark" if the defendant also displayed a

3    different mark, such as Oprah's name in this case, in close proximity.  Rather, this fact was one

4    of several considerations in a fact-intensive analysis.  Also crucial to our finding there was the

5    fact that "[t]he challenged phrase [did] not appear on the lipstick itself, on its packaging, or in

6    any other advertising or promotional materials related to [the defendant's] product." *Id*. at 31.

7    The words "Seal it with a Kiss!!" thus did not help to identify the product in any context but a

8    single advertising campaign.  The defendants' use of the phrase "Own Your Power" here was not

9    similarly tangential.

10           Kelly-Brown therefore has plausibly alleged that the defendants intended to create a new

11    line of products and services offered by Oprah under the mark "Own Your Power."  Defendants

12    thus have not met their burden at this stage in the litigation in demonstrating that their use of the

13    phrase "Own Your Power" in its various iterations was use other than as a mark.

14           *B.  Descriptive Sense*

15           The next element of a fair use defense is that the disputed use was in a descriptive sense.

16    Defendants argue that the use of the phrase "Own Your Power" was descriptive of the

17    publications to which that phrase was attached.  They argue that the use of the phrase on the

18    Magazine's cover describes its contents and also "served as an exhortation for readers to take

19    action to own their power and described a desired benefit of reading the Magazine Issue."  They

20    further assert that subsequent uses of the phrase in connection with the Event, on the Website,

21    etc., were merely referring back to this original, approved use.

22           At the outset, it should be noted that the phrase "Own Your Power" differs from the sort

23    of phrase which courts usually find to be used descriptively.  Courts more readily find a phrase

descriptive when it is in common usage.  For example, we have found the instruction "Seal it

with a Kiss!!" to be descriptive where lipstick testers were to kiss a postcard wearing the lipstick

and then send it to a loved one.  *Cosmetically Sealed Indus.*, 125 F.3d at 30.  In so holding, we

noted, "The phrase 'sealed with a kiss' is a fixture of the language, used by generations of school

girls, who have given it such currency that it is readily recognized when communicated only as

an acronym—SWAK."  *Id.*  Similarly, the Seventh Circuit held that the phrase "The Joy of Six"

was descriptive after noting that the phrase "is a play on the 1970s book series *The Joy of Sex*"

and "has been used to describe positive feelings associated with six of anything."  *Packman*, 267

F.3d at 641.  By contrast, we have held that the slogan "Swing Swing Swing" for golf clubs,

playing on the title of the Benny Goodman song "Sing Sing Sing," was not descriptive because

golfers "swing" their clubs, not "swing swing swing" them.  *EMI Catalogue P'ship*, 228 F.3d at

65.

Defendants have not argued that the phrase "Own Your Power" was in popular usage.

Nor indeed could they in a motion to dismiss.  Doing so would surely require defendants to

reference material beyond the four corners of the complaint.  Of course, discovery may reveal

that the phrase has some wider currency than is immediately apparent.

To be sure, there is no requirement that a usage be immediately recognizable as a popular

phrase for it to be descriptive.  *See Sands, Taylor & Wood Co.*, 978 F.2d at 952-53.  In *Sands*, the

court held that a material issue of fact existed regarding whether the tagline "Gatorade is Thirst

Aid" was descriptive notwithstanding the fact that it was not a "common phrase."  *Id.* at 953.  It

so held because "the average consumer [could] perceive[] 'Thirst Aid' as describing a

characteristic of Gatorade—its ability to quench thirst."  *Id.*

23

1    But here the phrase "Own Your Power" does not describe the contents of the Magazine.

2    The words are prominently displayed in the center of the Magazine with the subtitles "How to

3    Tap Into Your Strength"; "Focus Your Energy"; and "Let Your Best Self Shine" in smaller type

4    below.  Along the edges of the magazine are specific headlines for articles, including "THE 2010

5    O POWER LIST!  20 Women Who Are Rocking the World."  Although both the center phrase

6    and the article headline make use of the word "power," it does not appear that the phrase "Own

7    Your Power" is meant to describe the contents of a particular item in the Magazine.  For

8    example, the "Power List" inside the Magazine contains a list of admirable people, accompanied

9    by biographical information about each.  But the list does not provide specific advice regarding

10   how a reader can follow in the footsteps of any of these individuals, nor does it provide advice

11   regarding how a reader can become more powerful in general.

12   The Table of Contents of the Magazine further underscores the fact that the phrase is not

13   used as a headline for a particular article or content.  The bottom left corner of the page contains

14   a smaller picture of the cover and a list describing where the articles referenced on the cover can

15   be found.  It does not list any article corresponding to the phrase "Own Your Power."

16   It is the defendants' burden here to show that their use of the phrase "Own Your Power"

17   was descriptive.  At this stage in the litigation, defendants have not made that showing.

18   *C.  Good Faith*

19   The final element of a fair use defense is a showing that the use was made in good faith.

20   We "equate a lack of good faith with the subsequent user's intent to trade on the good will of the

21   trademark holder by creating confusion as to source or sponsorship."  *EMI Catalogue P'ship*,

22   228 F.3d at 66.  Even where there is no direct evidence of intent, "if there is additional evidence

23   that supports the inference that the defendant sought to confuse consumers as to the source of the

24

1    product, . . . the inference of bad faith may fairly be drawn." *Id.* (internal quotation marks

2    omitted).

3    Defendants, who bear the burden in establishing a fair use defense, assert that their good

4    faith is evident from the face of the complaint.  They argue, in essence, that it is implausible that

5    someone as well-known as Oprah would attempt to trade on the goodwill of someone relatively

6    obscure like Kelly-Brown.  *See Star Indus.*, 412 F.3d at 389 (finding good faith based in part on

7    "the implausibility of the notion that a premier international rum manufacturer would seek to

8    conflate its products with those of a regional discount vodka manufacturer").  The defendants

9    further observe that the phrase "Own Your Power"  was comingled with other Oprah-related

10   marks, suggesting both that no consumer would be confused as to the origin of their "Own Your

11   Power" publications and that they were not trading on Kelly-Brown's good will.

12   The defendants are correct that we have found good faith where a defendant prominently

13   displayed its own marks in a way that overshadows the plaintiff's mark, reasoning that the

14   prominent placement demonstrates that the defendant had no intent to trade on the plaintiff's

15   good will.  *Cosmetically Sealed Indus.*, 125 F.3d at 30-31.  But a plaintiff may also show absence

16   of good faith where a junior user had knowledge or constructive knowledge of the senior user's

17   mark and chose to adopt a similar mark.  *Star Indus.*, 412 F.3d at 389.

18   Kelly-Brown argues that she has pleaded facts sufficient to plausibly suggest that the

19   defendants had knowledge of her mark and chose to go forward with the "Own Your Power"

20   campaign anyway.  Indeed, she alleges that prior to the rollout of Oprah's new Oprah Winfrey

21   Network, to be known as "OWN," the defendants bought the rights to use the acronym "OWN"

22   from a woman who had previously registered it as an acronym for the "Onyx Woman Network."

23   Kelly-Brown argues that this transaction plausibly suggests that the defendants conducted a

1    trademark registration search for the word "Own," and that such a search would have turned up

2    her then-pending service mark in the phrase "Own Your Power." We agree that these allegations

3    do plausibly suggest that the defendants had knowledge of Kelly-Brown's mark, liked it, and

4    decided to use it as their own. In other words, defendants' allegations that they did not intend to

5    trade on Kelly-Brown's good will, even if true, do not preclude a finding of bad faith. *See*

6    *Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474, 483 (2d Cir. 1996) (declining to decide

7    good faith as a matter of law where defendant used a mark, which happened to be the name of

8    defendant's parent company, knowing it was identical to plaintiff's registered mark); *see also*

9    *Kiki Undies Corp. v. Promenade Hosiery Mills, Inc.*, 411 F.2d 1097, 1101 (2d Cir. 1969)

10   (explaining that defendant has the burden of persuasion in such circumstances).

11           At bottom, the defendants ask us to weigh their averments that they did not use the phrase

12   "Own Your Power" in order to trade on Kelly-Brown's good will against Kelly-Brown's

13   allegations that they were aware of her registered mark before launching the "Own Your Power"

14   campaign. Our role in considering a motion to dismiss is not to resolve these sorts of factual

15   disputes. Accordingly, the District Court erred in holding that the defendants have conclusively

16   demonstrated good faith in their use of the phrase "Own Your Power."

17           *D.  First Amendment Defense*

18           Defendants argue that the judgment of the District Court should be affirmed on the

19   ground that the First Amendment bars Kelly-Brown's claims. We decline to consider this

20   argument in the first instance.

21                                         *        *        *

22           The District Court dismissed Kelly-Brown's claims of trademark infringement, false

23   designation of origin, and reverse confusion because it found that Kelly-Brown had failed to

26

1  satisfy the threshold trademark use requirement and because it found that the defendants' use

2  was fair use.  We hold that Lanham Act plaintiffs need not satisfy the first element of a fair use

3  defense as a threshold requirement for bringing claims pursuant to the Lanham Act.  We also

4  hold that the defendants here have not adequately demonstrated that they are entitled to dismissal

5  of plaintiff's claims under the fair use defense.  Accordingly, the judgment of the District Court

6  with respect to these claims is vacated.

7          In addition, the District Court, having dismissed Kelly-Brown's federal claims, declined

8  to exercise supplemental jurisdiction over her remaining state law claims.  Because we vacate the

9  District Court's judgment with respect to three of Kelly-Brown's federal claims, we also

10  reinstate her state law claims.

11  **III.    Other Federal Claims**

12          *A.  Secondary Trademark Infringement*

13          Kelly-Brown brings two claims of secondary trademark infringement against the

14  sponsors of the Own Your Power Event:  vicarious trademark infringement and contributory

15  trademark infringement.  The District Court dismissed these claims on the separate ground that

16  Kelly-Brown failed to allege that the sponsors were involved in a partnership with the primary

17  infringers or that the sponsors treated the primary infringers as agents.  Kelly-Brown challenges

18  this holding.

19          "Vicarious liability for trademark infringement requires a finding that the defendant and

20  the infringer have an apparent or actual partnership, have authority to bind one another in

21  transactions with third parties or exercise joint ownership or control over the infringing product."

22  *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007) (internal quotation

23  marks omitted).  Kelly-Brown does not challenge the District Court's conclusion that she has not

1    properly alleged a partnership or agency relationship.  The District Court's holding with regard

2    to vicarious trademark infringement is therefore affirmed.

3            "To be liable for contributory trademark infringement, a defendant must have (1)

4    'intentionally induced' the primary infringer to infringe, or (2) continued to supply an infringing

5    product to an infringer with knowledge that the infringer is mislabeling the particular product

6    supplied." *Id.* (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 855 (1982)).  With

7    respect to the first prong, Kelly-Brown alleges only that the corporate sponsors provided

8    sponsorship for the Own Your Power Event.  This allegation is not sufficient to plausibly suggest

9    that the sponsors "intentionally induced" the remaining defendants to infringe.  The complaint

10    also does not allege that Wells Fargo, Clinique (and its corporate parent Estée Lauder), and

11    Chico's, the remaining defendants, supplied a product to an infringer with the knowledge that the

12    infringer was mislabeling that product.  Thus, Kelly-Brown has not adequately alleged the

13    second prong of the applicable test, either.  The District Court's holding with respect to

14    contributory trademark infringement is therefore affirmed.

15        *B.  Counterfeiting*

16            A counterfeit is "a spurious mark which is identical with, or substantially

17    indistinguishable from, a registered mark." 15 U.S.C. § 1127.  The District Court found that the

18    defendants had not produced a counterfeit mark after comparing Kelly-Brown's service mark

19    with the logo displayed at the Event, and the headline on the cover of the Magazine.  It found

20    that the font of the words "Own Your Power" in the Oprah publications was different from the

21    stylized powder-blue letters that Kelly-Brown registered as a part of her service mark.  Kelly-

22    Brown argues that the District Court's analysis was flawed because her mark was a service mark,

1   and so the ordinary consumer of her services would have less contact with the physical logo than

2   with the auditory representation of that mark.

3          This argument is of no effect with respect to the Website and the October Issue of the

4   Magazine.  While it may be that these publications were in competition with Kelly-Brown's own

5   services and publications, consumers interact with a magazine and website visually, and would

6   recognize the differences between Kelly-Brown's mark and the defendants' representations of

7   the words "Own Your Power" from a cursory visual inspection.  As the District Court noted, the

8   font, color, and capitalization of Kelly-Brown's mark differed from the offending uses made by

9   defendants.

10          Kelly-Brown's argument carries more weight in the context of the "Own Your Power"

11  Event.  An audience member in such an event might encounter the phrase "Own Your Power"

12  aurally and so might experience the phrase similarly in either Kelly-Brown's or Oprah's event.

13  Nonetheless, Kelly-Brown alleges that Oprah's "Own Your Power" logo figured prominently in

14  displays featured at the event, including the backdrops against which celebrities had their

15  photographs taken.  This logo is markedly different from Kelly-Brown's own mark, as already

16  discussed.  Further, the majority of audience members were not present at Oprah's invitation-

17  only event.  Most encountered the Event only later through video clips on Oprah's website,

18  which, as we have discussed above, contained obvious visual differences from Kelly-Brown's

19  mark.  In this context, the differences between Oprah's logo and Kelly-Brown's logo would be

20  clear.

21          Kelly-Brown thus does not state a plausible claim for trademark counterfeiting, and the

22  District Court's dismissal of these claims is affirmed.

23

1                           **CONCLUSION**

2          For the foregoing reasons, the judgment of the District Court is **VACATED** with respect

3   to Kelly-Brown's trademark infringement, false designation of origin, and reverse confusion

4   claims.  Kelly-Brown's state law claims are also accordingly reinstated.  We **AFFIRM** the

5   judgment of the District Court with respect to Kelly-Brown's vicarious infringement,

6   contributory infringement, and counterfeiting claims.  This case is **REMANDED** for further

7   proceedings not inconsistent with this opinion.